**JACOBSON LAW FIRM**
2730 EAST BROADWAY BLVD., SUITE 160
TUCSON, ARIZONA 85716
TELEPHONE (520) 885-2518
FACSIMILE (520) 844-1011
jeff@jhj-law.com
Jeffrey H. Jacobson, PCC #65402; SB#019502
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Karcher, | Case No.: 4:19-CV-00312-JR |
| Plaintiff, | **AMENDED COMPLAINT** |
| | **(Jury Trial Demanded)** |
| vs. | |
| Kevin K. McAleenan, Acting Secretary, Department of Homeland Security, | Hon. Jacqueline M. Rateau |
| Defendant | |

Plaintiff Elizabeth Karcher, through undersigned counsel, for her Amended Complaint against the Defendant, alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      For all times relevant to this Complaint, Plaintiff Elizabeth Karcher (Karcher) was employed as a United States Border Patrol (Border Patrol) Agent with the United States Department of Homeland Security (DHS), United States Customs and Border Protection (CBP) (collectively "Agency").

2.      Kevin K. McAleenan is the DHS Acting Secretary.

3.      Karcher brings this action under the Americans with Disabilities Act of 1990, as amended (ADA), 42 U.S.C. § 12101e, *et seq*.

4.      For all times relevant to this Complaint, Karcher was disabled as defined under the ADA.

5.      Defendant caused the events and actions complained of below to occur in Pima County, Arizona.

1

6.     Defendant is an employer within the meaning of the ADA.

7.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question); 28 U.S.C. § 1343 (jurisdiction over civil rights cases); and 5 U.S.C. § 7703 (jurisdiction over cases concerning civil service employment.)

8.     Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant employed Karcher in Pima County, Arizona, and or all or a substantial part of the events or omissions giving rise to the claims occurred in the state of Arizona.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     On or about June 2, 2017, Karcher initiated the EEO complaint process by seeking informal EEO counseling through the Agency's Privacy and Diversity Office.

10.     On or about July 14, 2017, Karcher filed a formal EEO complaint pursuant to 29 C.F.R. Part 1614, Agency case number HS-CBP-01759-2017.

11.     On or about May 14, 2018, Karcher initiated the EEO complaint process by seeking informal EEO counseling through the Agency's Privacy and Diversity Office alleging disability discrimination and reprisal for engaging in prior EEO activity.

12.     On or about June 22, 2018, Karcher filed a formal EEO complaint pursuant to 29 C.F.R. Part 1614, case number HS-CBP-01780-2018.

13.     Because case number HS-CBP-01780-2018 involved a matter which was also appealable to the Merit Systems Protection Board (MSPB), the Agency considered it a mixed case complaint as defined in 29 CFR §1614.302(a).

14.     On August 23, 2018, the Agency sent Plaintiff a copy of the EEO Report of Investigation (ROI) in HS-CBP-01780-2018 and notified her that because her case was a mixed case complaint, she did not have the right to request a hearing before an EEOC Administrative Judge.

15.     On September 13, 2018, DHS's Office of Civil Rights and Civil Liberties (CRCL) received the Agency's request for a Final Agency Decision (FAD).

16.     On or about March 18, 2019, EEOC Administrative Judge (AJ) Nancy Griffiths issued an Acknowledgment and Order Scheduling Initial Conference in HS-CBP-01759-2017 (EEOC No.: 540-2018-00219X).

2

17.     On or about May 8, 2019, pursuant to 29 C.F.R § 1614.1 l0(b), CRCL issued its FAD in HS-CBP-01780-2018, which included notification that Karcher could choose to file a civil action within 30 days after receiving the FAD unless an appeal is filed with MSPB.

18.     On June 11, 2019, Karcher moved to Amend her complaint in HS-CBP-01759-2017.

19.     This lawsuit was timely filed within 30 days after Karcher's receipt of the FAD.

20.     On July 2, 2019, AJ Griffiths denied Complainant's Motion to Amend.

21.     On July 29, 2019, the Agency moved to dismiss HS-CBP-01759-2017 arguing that "it is now the basis of a civil action that was filed by Complainant in a United States District Court."

22.     On August 13, 2019, AJ Griffiths granted the Agency's Motion to Dismiss, finding that "[t]he claims set forth in the civil action filed with the US District Court mirror the claims in the instant case."

## **GENERAL ALLEGATIONS**

23.     Plaintiff entered on duty with Border Patrol on April 13, 2015.

24.     On April 29, 2015, while on duty and in the Border Patrol Academy, Karcher fell from a rope on the ropes course at the Federal Law Enforcement Training Center (FLETC) in Artesia, New Mexico. Karcher fractured her left wrist and her T7 vertebrae.

25.     Since then, Karcher has also been diagnosed with, among other conditions, cervical and lumbar strain; muscle spasms in her back, shoulder, and neck; and migraines from cervical strain. All of these medical conditions have been traced back to the workplace injury that Karcher suffered at FLETC.

26.     After her injury, the Agency placed Karcher on light duty and initially assigned her to Border Patrol's Sector Headquarters in Yuma, Arizona, as the receptionist.

27.     Karcher filed a claim for compensation through the United States Department of Labor (DOL), Office of Workers Compensation Programs (OWCP), file number 132329741.

28.     Sometime in May or June 2016, the Agency's Injury Compensation Coordinator (ICC) Jolene Clark sent a letter to Karcher's physician asking if he was willing to increase Karcher's work hours from six to eight per day.

29.     As a result, Karcher's physician agreed to a trial of eight hours per day starting on June 10, 2016. With the increase, Karcher's physician directed her to take a break every hour.

30.     The 8-hour workday, however, caused increased pain. The Agency also did not accommodate Karcher's hourly breaks.

31.     From on or about May 2, 2016, through June 14, 2016, ICC Clark insisted that Karcher use a nurse from the Agency for her case filed with DOL OWCP.

32.     On or about July 1, 2016, Karcher's physician decreased her work day back down to six hours per day and restricted her to no more than two hours of driving per day.

33.     On July 6, 2016, Karcher underwent an Agency-ordered Independent Medical Examination (IME) in San Diego, California.

34.     On July 7, 2016, the day after the IME, and while she was on annual leave, the Agency transmitted a job offer to Karcher directing her to report to the Agency's Tucson Sector Three Points Station on Monday, July 11, 2016.

35.     The job offer also indicated that the Agency had purchased an adjustable height workstation for Karcher specifically to accommodate her sitting/standing restrictions.

36.     Three Points Station is approximately 250 miles from where Karcher was living in Yuma.

37.     At the time it made the Three Points job offer to Karcher, the Agency was aware that Karcher's physician had her on a two-hour driving restriction.

38.     The Agency never provided an explanation as to why, suddenly, it was ending Karcher's light duty assignment.

39.     Karcher asked for a new job offer that was consistent with her physician-directed restrictions, but never received a modified job offer.

4

40.     Karcher was also not given any time to allow her physician or the DOL to review the job offer.

41.     Karcher turned down the job offer because it did not meet the restrictions placed on her by her physician.

42.     Because Karcher did not report to Three Points Station, the Agency changed Karcher's status from Leave Without Pay (LWOP) to Absent Without Leave (AWOL); because she was no longer in LWOP status, the DOL reduced Karcher's pay to two hours per day.

43.     In October 2016, DOL determined the Agency's job offer was valid and on November 7, 2016, Karcher reported to work at the Three Points Station.

44.     After arriving at Three Points Station, the Agency served Karcher with her Weingarten rights and ordered her to write a memo to address her AWOL status without access to a computer.

45.     Instead of providing Karcher with an adjustable height workstation, the Agency put two blue plastic milk crates on top of the table she was working from.

46.     Since Karcher was injured on duty, she requested several accommodations. Most important, she asked the Agency to comply with all physician-directed restrictions as accommodations.

47.     From on or about November 17, 2016, through on or about March 3, 2017, the Agency failed to effectively accommodate Karcher with a temporary 6-hour workday with restrictions and an adjustable height workstation.

48.     On April 20, 2017, Karcher's hand surgeon opined that she was able to work with the following restrictions: no use of her left hand, no use of dangerous equipment or machinery, no unprotected heights, and no climbing ladders.

49.     On April 24, 2017, Karcher requested, as a reasonable accommodation, an adjustable work station, ergonomic chair, a talk-to-type computer program (if light duty required typing), a telephone headset (if light duty required answering telephones), a stool, transportation to and from work, and a work station closer to her residence.

5

50.     On April 27, 2017, Supervisory Border Patrol Agent (SBPA) Kramer informed Karcher that her reasonable accommodation and LWOP requests had not yet been approved and that she was expected to report to work on Monday, May 1, 2017, on light duty, for a full 8-hour day.

51.     At the time of SBPA Kramer's order, SBPA Kramer and/or the Agency knew that her approved medical restrictions included no driving.

52.     Also on April 27, 2017, Karcher's representative submitted another LWOP and reasonable accommodation request. A similar request was submitted on May 8, 2017.

53.     On or about May 18, 2017, the Agency made a permanent job offer to Karcher for a position as a Law Enforcement Communications Assistant, GS-1802-06 Step 10. She was given a deadline of June 11, 2017, to decide. At that point, however, she had still not reached Maximum Medical Improvement.

54.     On May 25, 2017, Karcher's representative submitted a request for an extension of the June 11, 2017, deadline.

55.     On May 31, 2017, Karcher submitted another reasonable accommodation request.

56.     On June 2, 2017, SBPA Kramer gave Karcher an Interactive Evaluation and Accommodation Request (IEAR) form to distribute to her physicians.

57.     On June 6, 2017, Karcher's physician prepared correspondence regarding the Agency's job offer, opining that it did not meet Karcher's needs or requirements.

58.     On June 26, 2017, Karcher submitted her physician's response to the IEAR job offer to the Agency.

59.     On or about June 9, 2017, the Agency denied Karcher's request for an extension of time to respond to the IEAR job offer.

60.     On July 3, 2017, Karcher's physician reiterated her ability to work with restrictions.

61.     On August 7, 2017, Karcher's physician restated his diagnosis that Karcher was able to work with restrictions.

62.     On August 10, 2017, Karcher's representative responded to the Agency's May 18, 2017, permanent reassignment to a non-law enforcement position.

63.     Also on August 10, 2017, the Agency informed Karcher that she was no longer in an LWOP status and that she was expected to report to work in a light duty capacity beginning August 11, 2017. At the time, the Agency was aware that Karcher was still unable to perform the work due to her physician-imposed restrictions.

64.     On August 29, 2017, Division Chief Bellavia denied Karcher's reasonable accommodation request.

65.     On October 4, 2017, Karcher submitted a memorandum entitled Light Duty Request with attachments requesting LWOP.

66.     On October 6, 2017, in denying her LWOP request, the Agency directed Karcher to use and refer to CBP Directive 51810-009, Temporary Light Duty. She was also instructed to report to a light duty assignment at Three Points Station.

67.     Starting with pay period 26 in 2016 and continuing, the Agency failed to certify and submit Karcher's DOL OWCP form CA-7 (Claim for Compensation) paperwork – as it was required to do - to the DOL; consequently, she never received the compensation she was due from the DOL for attending medical appointments.

68.     On February 20, 2018, the Agency proposed Karcher for removal from federal service based on the sole charge of 'Failure to Meet a Condition of Employment.'

69.     After responding in writing and participating in an oral reply, on or about May 9, 2019, the Agency sustained the charge and removed Karcher from federal employment.

## COUNT ONE
### (Failure to Accommodate – ADA)

70.     Karcher incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

71.     Karcher is disabled as defined in the ADA.

72.     Karcher, with or without reasonable accommodation, was able to perform the essential functions of her position at Defendant or could have performed the essential functions of a position obtained through reassignment.

73.    Defendant failed and refused to provide any accommodation, including but not limited to reassignment.

74.    Defendant failed and refused to engage in good faith discussions with Karcher to determine appropriate accommodation(s).

75.    Defendant failed to provide Karcher any reasonable accommodation, as required under the ADA.

76.    Defendant's failure to provide Karcher with any reasonable accommodation was intentional.

77.    Defendant's failure to provide Karcher any reasonable accommodation was malicious and/or done with reckless indifference to her federally protected rights.

78.    The effect of the allegations in the foregoing paragraphs has been to deprive Karcher equal employment opportunities and otherwise adversely affected her status as an employee, because of her disabilities.

**COUNT TWO**
**(Disability Discrimination – ADA)**

79.    Karcher incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

80.    Karcher was disabled as defined by the ADA, 42 U.S.C. § 12102(1).

81.    Karcher, with or without reasonable accommodation, was able to perform the essential functions of her position at Defendant or could have performed the essential functions of a position obtained through reassignment.

82.    Karcher repeatedly requested accommodations.

83.    Defendant discriminated against Karcher when it generally worsened the terms and conditions of Karcher's employment as alleged above, then removed her from federal employment, as will be demonstrated at trial.

84.    As a direct and proximate result of Defendant's discrimination of Karcher, Defendant removed Karcher from employment, damaging Karcher in lost wages, benefits, and other amounts to be determined at trial.

8

## COUNT THREE
### (Retaliation – ADA)

85.     Karcher incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

86.     Under 42 U.S.C. § 12203, it is unlawful to retaliate against anyone for participating in ADA-protected conduct.

87.     Karcher engaged in protected conduct under 42 U.S.C. § 12203 when she requested ADA accommodations, generally sought to exercise her ADA rights, and complained about Defendant's failure to follow federal law.

88.     Defendant retaliated against Karcher in response when, generally, it worsened the terms and conditions of Karcher's employment, then removed her from federal employment.

89.     As a direct and proximate result of Defendant's discrimination of Karcher, Defendant removed Karcher from employment, damaging Karcher in lost wages, benefits, and other amounts to be determined at trial.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

1.     For actual damages;

2.     For compensatory damages in a just and reasonable amount;

3.     For punitive damages, if available, in a just and reasonable amount;

4.     For a declaration that Defendant violated the ADA;

5.     For restoration of Plaintiff to her position of Border Patrol Agent *status quo ante* including, but not limited to, back pay plus interest and benefits;

6.     For an Order directing the Defendant to take such measures as are reasonable and necessary to ensure that unlawful employment practices like those described above are eliminated and do not recur;

7.     For Plaintiff's costs and attorney's fees in this matter pursuant to the ADA; *see also* 42 U.S.C. § 12117(a)

8.     For such other and further relief as the Court deems reasonable and just.

**JURY TRIAL REQUESTED**

9.      Plaintiff requests that the Court set this case for a jury trial.

DATED this 25th day of September, 2019.

**JACOBSON LAW FIRM**

 *s/Jeffrey H. Jacobson*
Jeffrey H. Jacobson
*Attorney for Plaintiff*

Filed via the CM/ECF system this 25th day of September, 2019.